### NATHANIEL P. HILL *v.* SARAH A. MOWRY, Executrix.

A chemist cannot, under Ch. 333, amending Ch. 230, section 5, of the Revised Statutes, maintain an action in his own name against the executrix of the subject of a coroner's inquest, for the recovery of charges for making, by order of the coroner, a *post mortem* examination and analysis of the contents of the testator's stomach and reporting thereon to the coroner; but such charges must, with the other expenses of the inquest, be exhibited by the coroner to the executrix, as part of the funeral charges, and an action for all the expenses of the inquest, if need be, be brought by the coroner against the executrix for the benefit of all interested therein.

It is a statute prerequisite to the demand and action for the expenses of such chemical examination and analysis, that the same shall first be determined and allowed, as reasonable, by the town council of the town in which the inquest is held.

THIS was an action of assumpsit, commenced by the plaintiff, a professor of chemistry in Brown University, against the executrix of Tyler Mowry, late of Smithfield, for the plaintiff's services in examining and analyzing the contents of the testator's stomach after death, by order of the coroner, who, with a jury, made inquest of the cause of the testator's death.

The action was commenced at the June term, 1861, of the Court of Common Pleas, for the county of Providence, when the defendant pleaded two pleas : *first*, in abatement, that the action was brought within one year after the will of her testator was proved ; and, *second*, if the above plea was overruled, the general issue.

Joining issue on the last plea, to the plea in abatement, the

plaintiff replied, in substance, that said Tyler Mowry died on the 29th day of May, 1860, and that strong suspicions were entertained and expressed by his family and friends, that he came to his death by violence or poison ; that, on the 26th day of June, 1860, a written request, signed by the daughter of said Tyler Mowry and many other of his respectable friends and neighbors, was presented to Daniel Pearce, Esq., then a coroner of the town of Smithfield, that he cause a *post mortem* examination of, and hold an inquest upon, the body of the said Tyler ; that, thereupon, the said Pearce, in his said capacity of coroner, on the 2d day of July, 1860, issued his warrant in due form for a coroner's jury to be summoned, and that said jury was duly impanneled and sworn on the 3d day of July, 1860, and on said day and days succeeding, a *post mortem* examination of the body of said Tyler Mowry was had and made by said coroner and jury, and by his and their direction, and that, as a part of the same, the said coroner caused a summons to be served on the plaintiff, to attend said examination, and that the plaintiff attended the same in obedience to said summons. And the plaintiff avers, that he is, and was at said trial, a professor of chemistry and practical chemist, and that, as such, he was then and there requested and directed by said coroner to make a chemical examination and analysis of the stomach of the said Tyler Mowry, and of the contents thereof, and in so doing did spend much time, labor, skill, care and diligence, and that the charges for the services so rendered constitute and are the claim, and the only claim, and cause of action set forth and declared on in the plaintiff's suit ; that the plaintiff made report in writing of his doings to said coroner and jury, and the same was by him and them used in said inquest ; that afterwards, to wit, on the 16th day of July, 1860, said claim, now sued, was presented to said coroner, and was by him allowed on the taking of said inquest, and to be paid out of the estate of the deceased, as part of the funeral charges, and with priority, as such, and was by him presented to the defendant against the estate of said Tyler Mowry, deceased, and that the defendant then and there refused to allow the same. And the plaintiff avers, that the estate of said Tyler Mowry is sufficient to pay all the fees and expenses of said coroner's inquest, and all his

funeral charges; and that, by force of Ch. 230, section 5, of the Revised Statutes, and by force of the act passed at the January session of the General Assembly, 1860, entitled,—"An act in addition to, and in amendment of, Title 33, Ch. 230, of the Revised Statutes, Of fees and costs in certain cases," said action has accrued to the plaintiff to have and recover his aforesaid claim in his said declaration mentioned, and this he is ready, &c., wherefore he prays judgment, &c.

At the December term, 1861, of the Court of Common Pleas, in Providence, the case was tried by the court upon an agreed statement of facts, embracing the facts, in detail, averred in the above replication, and, in addition, that the plaintiff's claim for services allowed by the coroner amounted to the sum of $125, and was exhibited to the defendant, against the estate of the said Tyler Mowry, and by her refused payment before the commencement of this suit, and that said estate was sufficient to pay all debts and liabilities. The Court of Common Pleas gave judgment to the plaintiff for the sum of $110 and costs; whereupon, the defendant appealed to this court, at the March term, 1862, for the county of Providence. At that term, the case was submitted to the court upon the above statement of facts, with an agreement, that if, upon the facts contained therein, the court were of opinion that the plaintiff could maintain his action, then judgment was to be entered for the plaintiff for the sum allowed by the court below.

*Blodgett, with whom was W. H. Potter, for the plaintiff :—*

The act, passed at the January session of the General Assembly, 1860, in regard to costs and expenses of coroners' inquests, makes but two changes in Ch. 230, section 5, of the Revised Statutes : *first*, it increases the fees of the coroner's jurors, if the examination be protracted beyond a day ; and, *second*, it authorizes coroners to make, or cause to be made, chemical analyses, putting the expenses of such examinations in the same category with the fees of the coroner. It does not change the mode of paying or obtaining payment of the fees. The true meaning of the 2d section of the act of 1860, is, that in case the expenses of the coroner's inquest be brought against the town, it shall be the duty of the town council to allow them ; but in case there be any

estate of the subject of the inquest, that they shall be exhibited against the estate, and then the town council will have nothing to do with them. The section is merely directory to the town council, to allow the bills, properly brought against the town under the law.

There is no propriety in making town councils auditors of accounts of this nature, a duty which they are not qualified to perform. The Court of Probate will pass upon them, if paid by this executrix, and the audit of the town council is unnecessary as well as unreasonable. The injustice of compelling such an audit is apparent; since, if the town council should refuse to allow the account, there would be no remedy for the claimant against the estate of the subject of the inquest. Such an audit would impose upon the town council judicial functions, without any appeal on the part of the claimant; whereas, the claimant, before a Court of Probate, has an appeal.

*Bradley, for the defendant :—*

Our *first* objection to this claim is, that it has never been allowed by the town council of Smithfield, as required by the statute of 1860. The *first* act, Ch. 230 of the Revised Statutes, provides for fees fixed in amount, in coroners' inquests; the *second*, the act of January session, 1860, provides for indefinite expenses, and for that reason requires them to be allowed by the town councils, as they cannot, from their nature, be properly fixed in amount by the statute. This allowance is necessary in all cases, whether the estate of the deceased, the town, or the State is to pay such expenses.

Our *second* objection to the claim is, that the expenses of a coroner's inquest should have been presented against the estate of the defendant's testator, by the coroner himself, and the suit, if any was brought, should have been brought by him. It was never intended that each juror, witness, the coroner, the chemist, &c., should separately claim against and sue the estate for their fees.

BRAYTON, J. The plaintiff in this case claims to recover for his services rendered in making certain chemical analyses, by order of the coroner, at an inquest upon the body of Tyler Mowry, the defendant's testator. The case is submitted upon a statement

of facts, and under the agreement, that if the court shall be of opinion that the plaintiff can, upon this state of facts, maintain his action, that judgment shall be rendered for him for the sum of $110. The facts are agreed; and so far as they affect the right of recovery by the plaintiff, are, substantially, these :—that at a coroner's inquest, duly holden upon the body of Tyler Mowry, the defendant's testator, by Daniel Pearce, Esquire, a coroner duly authorized, a chemical analysis was ordered by him to be made by the plaintiff, for the purposes of the inquest, which analysis was made and duly reported to the said coroner and the jury. The plaintiff's bill of charges for making said analysis was allowed by said coroner, and by him exhibited to the executrix, against the estate of said Tyler Mowry, and payment of the same was by her refused before the commencement of this suit; and that there is, in the hands of said executrix, assets sufficient for the payment of all the debts and liabilities of the testator.

One objection made to a recovery in this case is, that the statute prescribes and requires that suits for the recovery of the fees and expenses of coroner's inquests shall be brought and prosecuted by the coroner, who is to represent the lawful claims of all persons concerned in the inquisition, and does not contemplate a suit against the estate of the deceased by any one or more of those entitled to the fees prescribed. It is by force of the provisions of Ch. 333, of the statutes, in amendment of section 5, Ch. 230, of the Revised Statutes, that expenses of the kind here claimed are recoverable at all. The second section of the amendatory act, first providing that the town councils shall allow the reasonable expenses of this kind, declares, that the fees and expenses thus provided for shall be allowed and paid in the manner as by said 5th section is directed. The directions of that section are, that all the fees and expenses of the inquest, to be paid as part of the funeral charges out of the estate of the deceased, are to be exhibited against the estate by the coroner; not his own fees merely, but all the expenses of the inquest,—and enforced by legal process, if need be; which can mean nothing more nor less than that he should prosecute a suit, if need be, for the entire expenses of the inquest. We think this is sufficiently clear from this section, if it were now a new provision. It is not new, however.

Provisions made in terms somewhat more express than the language here used, but the same substantially, were contained in the Digest of 1798, p. 399,—that " when the deceased shall have effects in the hands of any person," the coroner might demand " the whole amount of the lawful fees attending the inquisition ;" and upon his neglect to pay, " such coroner may sue such person for the same ;" and upon recovery, " the coroner shall pay the jury and all others concerned in such inquisition their lawful demands." This was omitted from the Digest of 1822, and these expenses were made payable out of the treasury of the town in which the body was found. But, in January, 1824, it was again enacted, that the charges of inquisition shall be paid out of the estate of the deceased ; and that " it shall be the duty of the coroner to exhibit said charges as a claim against said estate, and to enforce it by law, if need be." So this act continued down to the revision in 1857, where we find it in terms somewhat less pointed, but unchanged in substance. We think it is quite clear, that it was not intended that the estate of the deceased should be subject to the several suits of all those who might have claims for fees or expenses of the inquest ; but that all such fees and expenses should be demanded and received by the coroner, to be paid out, when received, to the several persons entitled.

The plaintiff, therefore, in our opinion, is not entitled to maintain this suit ; but it should have been a suit in the name of the coroner, for all the expenses of the inquest.

It is not necessary to consider the other objection made to a recovery by the plaintiff, in order to determine this suit, and we are induced to do so, only in view of the probable result of our determination of the first objection, viz. : that it may render another suit necessary to be brought by the coroner, for the expenses, generally, of the inquest. The second objection is, that in order to maintain a suit, even by the coroner, the reasonable expenses of this service should be ascertained and settled by the town council. It will, we think, be agreed, that prior to the passage of the amendatory act, Ch. 333, there was no power in the coroner to order services of this description, nor was there any provision for the payment of any such, either from the treasury of the State, or of the town, or from the estate of the

deceased. We find, in this act, provision made upon this subject, and thus made:—" The town councils shall allow the reasonable expenses of *post mortem* examinations and chemical analyses ordered by the coroner at the taking of any inquest." This is made part of section 5, Ch. 230, and may properly be added to the several items of fees allowed for coroner's inquests, contained in that section. As to all the other items, the sums to be allowed are definite and certain. For the inquest, for the coroner by the day, for the jury by the day, for summoning the jury, for each page of the testimony, are sums, fixed and definite. It seems to have been the object of the entire chapter, 230, " Of fees and costs in certain cases," to prescribe a rule for such allowances, so that it would be a mere matter of calculation, to determine the amount. Whenever it is not practicable to do so, from the nature of the services, provision has been made for making it certain and definite. For aid in the execution of process, what is reasonable is to be allowed by the court; so, to the officer, for keeping property attached on mesne process, the court shall allow what is reasonable compensation; and so, for serving a search warrant. This is but another instance of the same kind. It does not seem to have been contemplated that the amount of the fees, costs, or expenses provided for in this chapter, 230, should be left for an assessment by a jury; and if, in this case, it is to be so left, it is an excepted case. There is an additional reason why, in the case of the expenses of an inquest, there should be no such exception. The entire expenses, all the rest of which are ascertained or ascertainable by calculation merely, are to be by the coroner exhibited as one claim against the estate of the deceased, and if suit therefor be necessary, he may recover them in one action. The very form of the provision made in the amendatory act,—" The town councils shall allow the reasonable expenses of *post mortem* examinations and chemical analyses ordered by the coroner,"—would seem to require this construction. No right to payment out of the estate for any such services is given, except by this language; and if this be omitted, the plaintiff is without remedy. The language which gives him the right, prescribes the mode of ascertaining the amount.

We are of opinion, that the town council of the town where

the inquest is held must first determine and allow the reasonable expenses for such services, before a suit can be maintained therefor. Upon both points, judgment must be for the defendant, for her costs.